# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **BOA VIDA HEALTHCARE, LLC,** ) <br> **an Indiana limited liability company,** ) <br> **and** ) <br> **BOA VIDA HOSPITAL OF** ) <br> **ABERDEEN, MS, LLC, d/b/a** ) <br> **Monroe Regional Hospital,** ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **PICKENS COUNTY HEALTH** ) <br> **CARE AUTHORITY, an Alabama** ) <br> **non-profit corporation,** ) <br> ) <br>     **Defendant.** ) | Case _____ |

## COMPLAINT

For its Complaint against Defendant Pickens County Health Care Authority ("the Authority"), Plaintiffs Boa Vida Healthcare, LLC ("Boa Vida") and Boa Vida Hospital of Aberdeen, MS, LLC d/b/a Monroe Regional Hospital ("Monroe"), state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Boa Vida is an Indiana limited liability company. The members of Boa Vida are residents and citizens of states other than Alabama.

2. Monroe is a Texas limited liability company. The members of Monroe are residents and citizens of states other than Alabama.

3. The Authority is an Alabama non-profit corporation with its principal place of business in Pickens County, Alabama. The Authority owns Pickens County Medical Center (the "Hospital"), located on 241 Robert K. Wilson Drive in Carrolton, Alabama.

1

4. Each of Boa Vida's and Monroe's claims in this action exceed $75,000, exclusive of interest and costs, and accordingly, this Court has original diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a). To the extent any claim does not exceed $75,000, exclusive of interest and costs, the Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this district and division, in that the Authority is situated and is doing all business in this district and division, and a substantial portion of the acts or omissions involved in this case occurred in this judicial district.

## FACTUAL ALLEGATIONS

6. Boa Vida is in the health-care facility management business. It manages hospitals and other health care centers by employing or otherwise procuring staff, handling the procurement of supplies and equipment, managing and running real-property facilities, handling patient billing and collection, and related tasks. One of the hospitals Boa Vida manages is Monroe Regional Hospital, located in Aberdeen, Mississippi. Boa Vida manages Monroe Regional Hospital through Boa Vida's related entity, Monroe.

7. Up until late 2018, the Authority also managed the Hospital. In late 2018, the Hospital was facing significant financial distress. Patient populations were substantially down; collections were non-existent; expenses far exceeded operating revenues; and the Hospital was in danger of needing to be shuttered.

8. Boa Vida and the Authority began discussions in late 2018 concerning the potential for Boa Vida to attempt a "turnaround" of the Hospital's operations. Boa Vida has been successful in similar efforts to reverse declining revenues and to achieve operational efficiencies in rural or suburban hospitals and clinics. Because Monroe was already operating the nearby Monroe

Regional Hospital, Boa Vida and Monroe viewed a potential relationship with the Authority as a "win-win," whereby the Hospital and the Authority could achieve greater operational efficiencies, and Boa Vida and Monroe could actually enhance its efficiencies through its operations of another facility in relatively close proximity.

9.  The Authority elected to have Boa Vida assume management responsibilities for the Hospital, and for Monroe to provide supplies and services to the Authority to facilitate the Hospital's operations. To that end, the parties entered into two agreements. On December 18, 2018, Boa Vida and the Authority entered into a "Management Agreement," under which Boa Vida would assume immediate management of the Hospital. A copy of that Management Agreement is attached as **Exhibit 1** hereto. On February 25, 2019, Boa Vida and the Authority also entered into a Billing and Services Agreement (the "BSA," **Exhibit 2** hereto), under which Boa Vida provided billing and revenue cycle services to the Authority. And on March 11, 2018, Monroe and the Authority entered into a "Services Agreement," under which Monroe would provide certain supplies and services and materials to the Authority to facilitate operations of the Hospital. A copy of the Services Agreement is attached as **Exhibit 3** hereto.

10. Under the Management Agreement, Boa Vida would manage the Hospital for the Authority for a period of 20 years. Management Agreement at p. 10, ¶ 8. Boa Vida was to be paid a minimum of $25,000 per month (*id.* at p. 9, ¶ 7.2), plus its expenses (*id.* at ¶ 7.1) and certain incentive payments (*id.* at p. 10, ¶ 7.3). Both the Authority and Boa Vida had rights of termination under certain conditions (*id.* at pp. 10-11, ¶ 9). Under the BSA, Boa Vida provided certain additional billing and collection and revenue cycle services for the benefit of the Authority, in exchange for 6% of gross collections (see BSA at p. 3, ¶ 4). And under the Services Agreement,

Monroe would provide certain materials and services to the Authority in exchange for compensation set out in a Schedule A. Services Agreement at pp. 1-2, ¶ 3.1.

11. At the time Boa Vida commenced its management efforts, the Hospital's operations were in dire distress. The patient population at the Hospital was 1 – one patient. Within several weeks, Boa Vida increased the population to 16. In addition, Boa Vida had to inject substantial amounts of its own money in initial operating capital to fund the Hospital's operations. The increase in patient population, the injection of operating cash, and Boa Vida's operational expertise brought an immediate improvement to the Hospital's financial standing.

12. The Authority never paid Boa Vida or Monroe for any services or materials provided under any of the agreements. On March 22, 2019, with no prior notice and in violation of the termination provisions of the Agreement, the Authority purportedly terminated the Management Agreement and directed Boa Vida off of the Hospital property. See Termination Notice, **Exhibit 4** hereto. The Authority had no right to terminate the Management Agreement under its terms, and thus has breached the Agreement. The Authority has never terminated the BSA or the Services Agreement.

13. As a proximate result of the Authority's breaches of the agreements, Boa Vida and Monroe have been damaged.

    a. Under the Management Agreement, Boa Vida's current damages are $101,736.46 (plus continuing $25,000 monthly Management Fees incurred after April 1, 2019). Additionally, the Authority's breach of the Management Agreement has deprived Boa Vida of expected profits which would have been earned by Boa Vida under the Management Agreement for its term. Finally, the Management Agreement provides that

Boa Vida is to be reimbursed for its attorneys' fees and expenses associated with this action. Management Agreement at p. 8, ¶ 6.7; p. 14, ¶ 14.1; p. 16, ¶ 23.

      b.      Under the BSA, Boa Vida's damages are 6% of gross collections from February 25 through March 22, totaling $42,529.36. In addition, the BSA provides that Boa Vida is to be reimbursed for its attorneys' fees and expenses associated with this action. See BSA at p. 7, ¶ 13(h). The amount of such fees and expenses cause the amount of damages under the Services Agreement, standing alone, to exceed $75,000.

      c.      Under the Services Agreement, Monroe's current damages are $99,574.02. In addition to those damages, Monroe is also entitled to the recovery of attorneys' fees and expenses associated with this action. Services Agreement at pp. 5-6, ¶ 10.17.

## COUNT ONE – BREACH OF CONTRACT – MANAGEMENT AGREEMENT

14.    Boa Vida realleges and adopts by reference the factual allegations in paragraphs 5-12 above.

15.    The Authority has breached its Management Agreement with Boa Vida.

16.    As a proximate result of the Authority's breach, Boa Vida has been damaged in the amount of $144,265.82 (plus continuing $25,000 monthly Management Fees incurred after April 1, 2019). Additionally, the Authority's breach of the Management Agreement has deprived Boa Vida of expected profits which would have been earned by Boa Vida under the Management Agreement for its term. Finally, the Management Agreement provides that Boa Vida is to be reimbursed for its attorneys' fees and expenses associated with this action. Management Agreement at p. 8, ¶ 6.7; p. 14, ¶ 14.1; p. 16, ¶ 23.

17.    In addition, Boa Vida may, at its option, seek to compel specific performance of this Management Agreement. See Agreement at p. 16, ¶ 23.

WHEREFORE, Boa Vida prays that the Court will enter judgment in its favor, and against the Authority, in such amount of compensatory damages, pre-judgment and post-judgment interest, lost profits, attorneys' fees and costs, as well as such further relief to which Boa Vida may be entitled. Boa Vida further requests that the Court enter an injunction reinstating Boa Vida as Manager and declaring, to the extent necessary, that the Authority's purported termination of the Agreement was unlawful and itself a breach of the Agreement and is null and void.

## COUNT TWO – BREACH OF CONTRACT – BSA

14. Boa Vida realleges and adopts by reference the factual allegations in paragraphs 5-12 above.

15. The Authority has breached its BSA with Boa Vida.

16. As a proximate result of the Authority's breach, Boa Vida has been damaged in the amount of $42,529.36. In addition, the BSA provides that Boa Vida is to be reimbursed for its attorneys' fees and expenses associated with this action. See BSA at p. 7, ¶ 13(h). The amount of such fees and expenses cause the amount of damages under the Services Agreement, standing alone, to exceed $75,000.

17. In addition, Boa Vida may, at its option, seek to compel specific performance of this Management Agreement. See Agreement at p. 7, ¶ 13(h).

WHEREFORE, Boa Vida prays that the Court will enter judgment in its favor, and against the Authority, in such amount of compensatory damages, pre-judgment and post-judgment interest, lost profits, attorneys' fees and costs, as well as such further relief to which Boa Vida may be entitled. Boa Vida further requests that the Court enter an injunction reinstating Boa Vida under the BSA and declaring that Boa Vida is entitled to continue operating the Hospital under the BSA and the Management Agreement.

## COUNT THREE – BREACH OF CONTRACT – SERVICES AGREEMENT

18. Monroe realleges and adopts by reference the factual allegations in paragraphs 5-12 above.

19. The Authority has breached its Services Agreement with Monroe.

20. As a proximate result of said breach, Monroe has been damaged in the amount of $99,574.02. In addition to those damages, Monroe is also entitled to the recovery of attorneys' fees and expenses associated with this action. Services Agreement at pp. 5-6, ¶ 10.17.

WHEREFORE, Monroe prays that the Court will enter judgment in its favor, and against the Authority, in such amount of compensatory damages, pre-judgment and post-judgment interest, attorneys' fees and costs, as well as such further relief to which Monroe may be entitled. Boa Vida further requests that the Court enter an injunction reinstating Boa Vida under the Services Agremeent and declaring that Boa Vida is entitled to continue operating the Hospital under the Services Agreement and the Management Agreement.

This the 3rd day of June, 2019.

/s/ Wilson F. Green
Attorney for Plaintiffs
Boa Vida Healthcare, LLC
And Boa Vida Hospital of
Aberdeen MS, LLC d/b/a
Monroe Regional Hospital

**OF COUNSEL:**
Wilson F. Green
Fleenor & Green LLP
1657 McFarland Blvd. N., Ste. G2A
Tuscaloosa, Alabama 35406
(205) 722-1018
wgreen@fleenorgreen.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS**:

PICKENS COUNTY HEALTH CARE AUTHORITY
c/o Shawn McDaniel, Chair
241 Robert K. Wilson Drive
Carrollton, Alabama 35447

With Copy sent by counsel to:
James F. Henry
Cabaniss Johnston Gardner Dumas & O'Neal, LLP
Renasant Place, Suite 700
Birmingham, AL 35203