IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BOA VIDA HEALTHCARE, LLC, )<br>an Indiana limited liability company, )<br>and )<br>BOA VIDA HOSPITAL OF )<br>ABERDEEN, MS, LLC, d/b/a )<br>Monroe Regional Hospital, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>PICKENS COUNTY HEALTH )<br>CARE AUTHORITY, an Alabama )<br>non-profit corporation, )<br>)<br>    Defendant. )| Case 7:19-cv-00840-GMB |

**PLAINTIFFS' MOTION TO COMPEL
DEFENDANT TO PROVIDE EXPERT REPORT OF JOHN O'NEIL
CONTAINING FACTS RELIED UPON AND OPINIONS FORMED
AND FOR RELATED RELIEF**

Pursuant to Fed. R. Civ. P. 26(a)(2)(C), Plaintiffs Boa Vida Healthcare, LLC ("Boa Vida") and Boa Vida Hospital of Aberdeen, MS, LLC d/b/a Monroe Regional Hospital ("Monroe"), hereby move the Court to compel Defendant to Pickens County Health Care Authority ("PCHCA") to provide a complete statement of the "facts and opinions" to which a witness – a non-party named John O'Neil ("O'Neil") – is expected to testify.

Plaintiffs further move the Court for a limited discovery extension for the sole purpose of taking O'Neil's deposition, after the Court's ruling on this Motion regarding a proper expert report.

Finally, Plaintiffs request a Status Conference with the Court to discuss this Motion and the case generally as it heads toward non-jury trial.

The grounds are as follows:

1

1.    This is a breach of contract case. PCHCA entered into a 20-year Management Agreement with Boa Vida (and ancillary agreements with Boa Vida and Monroe) for the management of Pickens County Hospital (the "Hospital"). That agreement was negotiated in late 2018 primarily between Plaintiffs and O'Neil, who at the time was the Hospital's part-time CEO. He left the hospital after Boa Vida took over management. Seven weeks after Boa Vida came on board, PCHCA terminated the Management Agreement in contravention of the termination provision therein (PCHCA never terminated the ancillary contracts.) Boa Vida and Monroe are owed money for these breaches, and they lost profits as well (a lot of them).

2.    Lost profits are obviously the stuff of financial experts. So on March 6, 2020, Plaintiffs disclosed their lost profits expert, Dr. Robert McLeod of the University of Alabama, and provided PCHCA with his traditional Rule 26(a)(2)(B) expert report. That expert report is attached as **Exhibit 1**. In that report, Dr. McLeod describes his methodology, the facts being relied upon and assumptions being made, and calculates the past and future lost profits to Plaintiffs.

3.    On June 5, 2020, PCHCA counter-designated O'Neil as a potential expert, but did so under Rule 26(b)(2)(C). A copy of that disclosure is attached as **Exhibit 2**. There were a total of 10 items within the section of that disclosure on "facts and opinions to which the witness is expected to testify" (i.e., the disclosure under Rule 26(b)(2)(C)). Only *one* of those items, however, even touched upon the lost profits issue, contained in this statement:

> 4) It is anticipated that Mr. O'Neil will testify to the unlikely prospect of PCMC achieving the financial projections in plaintiff's expert report.

Items 1-3 and 5-10 were largely factual matters relating to O'Neil's involvement with PCHCA. The cumulative effect of the disclosure was that O'Neil really a fact witness – he interfaced with Boa Vida in pre-contract discussions for PCHCA – but one whose testimony based on his

2

involvement with PCHCA might potentially tread, though lightly, upon anything contained in Dr. McLeod's analysis.

4. The parties took the relevant depositions of witnesses in late July and early August. The last deposition to be taken was that of O'Neil. Between O'Neil's schedule (as a non-party) and attorney schedules, that deposition could not be set before the discovery deadline of August 7, so it was set for August 11. The parties agreed to take it out of time without involving the Court, since it was by only two business days.

5. On August 6 after 6 pm, PCHCA's counsel disclosed by email that O'Neil had reviewed and analyzed the McLeod Report (available since March 2020), had examined his deposition (taken on July 27), and had examined the "Stroudwater Report" (a report commissioned by PCHCA and presented in January of 2019, just before Boa Vida assumed its management role, regarding the Hospital's operations). PCHCA also provided O'Neil's CV at that time.

6. PCHCA's August 6, 2020 disclosure made apparent what was previously not: that PCHCA intended to use O'Neil more as a traditional counter-expert, to meet Dr. McLeod's analysis regarding lost profits. Plaintiffs' counsel then asked for a complete statement of opinions and grounds from PCHCA's counsel concerning O'Neil. PCHCA refused to provide any such statement on the basis that the disclosure of O'Neil was made under Rule 26(b)(2)(C), to which Plaintiffs responded that the parties can agree to provide subsection (B) disclosures for a subsection (C) expert, or the Court can order it in its discretion. After some back-and-forth emails and a Rule 37 meet-and-confer conference call on August 10 concerning the matter (Plaintiffs certify that they conferred with PCHCA in good faith, pursuant to Rule 37(a)(1)), the parties are at an impasse. Plaintiffs canceled the O'Neil deposition for August 11 and have filed this Motion.

7. Plaintiffs are asking the Court to compel PCHCA, before O'Neil is deposed, to provide a more substantive statement of opinions and grounds for O'Neil regarding lost profits than previously provided, for two reasons. First, Rule 26(a)(2)(C) says that a disclosure should contain "a summary of the facts and opinions to which the witness is expected to testify." The disclosure provided ("Mr. O'Neil will testify to the unlikely prospect of PCMC achieving the financial projections in plaintiff's expert report") does not describe "facts and opinions" under Rule 26(b)(2)(C) – because it contains no facts at all, and the opinion is generalized and conclusory and doesn't tie to any specific facts. *See Adacel, Inc. v. Adsync Technologies, Inc.*, --- F. Supp. 3d ---, 2020 WL 4588415, at *4 (M.D. Fla. July 9, 2020) (finding Rule 26(b)(2)(C) report inadequate; "although Plaintiffs summarized the subject matter of Mr. Nalpatian's expected testimony, the disclosure fails to provide any facts or opinions related thereto"); Compare *United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cty., Alabama*, 140 F. Supp. 3d 1218, 1233–34 (N.D. Ala. 2015) (Ott, M.J.) (overruling Rule 26(b)(2)(C) procedural objection of Government to testimony of two landowners, Enfinger and Warren, regarding diminution in value to land where witnesses stated bases of their opinions and stated specific amounts of diminution for specific parcels, and where Government didn't even raise the issue before witnesses' depositions).

8. Second, even if O'Neil's initial disclosure was adequate, Rule 26(a)(2)(C) unmistakably gives the Court discretion to compel a more complete disclosure – one can be "ordered by the Court," as the rule states –in appropriate circumstances. In order to cross-examine financial opinions, a lawyer typically consults with his own expert (in this case, Plaintiffs would be consulting Dr. McLeod) to spot methodological flaws. *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1412-13 (11th Cir. 2011) (stating that the purpose of the expert witness disclosure

requirement is "so the opposing party can use the report to examine the expert at the deposition"), cited in *Walker v. Life Ins. Co. of N. Am.*, No. 5:16-CV-00506-HNJ, 2020 WL 2543086, at *3 (N.D. Ala. May 19, 2020).

9. In addition to these grounds, there's an even more compelling reason that a more fulsome disclosure should be forthcoming regarding O'Neil – and it's one which the Court should have in its field of vision now in deciding the question. It involves the ongoing effects of COVID-19 on rural hospitals such as the Hospital – a matter which may directly bear on lost profits calculations. The "Stroudwater Report" witness, Eric Shell, was deposed on August 6, 2020. Shell testified that he had developed in the past few months a handout for use by rural hospital professionals in calculating how much CARES Act[1] and PPP money they could obtain, and the methodology for determining such grants (along with certain cost reports). Shell produced that document at his deposition. Since this new information from Shell should (if possible) be weaved into Plaintiffs' lost profits model to create the most accurate model possible, Plaintiffs are currently working with Dr. McLeod to use Shell's testimony to refine further Dr. McLeod's modeling – all permissible supplementation under Rule 26(a)(2)(E) (post-pandemic CARES Act and PPP funding wasn't on anyone's radar as of March 6, 2020, when Dr. McLeod prepared his report).

10. Plaintiffs realize that McLeod's supplementation may open the door for PCHCA to counter-designate an opposing expert to meet McLeod's supplemental or amended testimony (or to use O'Neil to do so). And Plaintiffs have no problem with that. So in Rule 37 discussions, Plaintiffs offered to have Dr. McLeod first refine his model and provide a supplemental or amended report, then allow PCHCA an opportunity to counter-designate and to provide (whether it intends to stick with O'Neil, or someone else) a fuller statement of opinions and grounds.

---

[1] "CARES Act" is the Coronavirus Aid, Relief, and Economic Security Act of 2020.

PCHCA refused that offer. Plaintiffs believe that course of proceeding makes the most sense, for three reasons:

(a) it provides for a complete and meaningful expert disclosure on both sides;

(b) it would take about 60 days (if that) to complete (Plaintiffs propose a McLeod updated disclosure by August 31, counter-designation by PCHCA by September 21, depositions complete by October 16); and

(c) it would not impact the dispositive motion deadline (of August 31, because PCHCA's corporate witness admitted it owes money under the subject agreements and is therefore in breach of the contracts –the only question is how much the damages are) or non-jury trial (the case can be trial-ready after O'Neil's deposition, though COVID-19 restrictions may impact that).

11. Finally, Plaintiffs believe a Status Conference with the Court to hear this Motion, and to discuss the case generally as a non-jury trial approaches, might be helpful.

WHEREFORE, Plaintiffs request that the Court compel PCHCA to provide a complete statement of opinions and bases of opinions for O'Neil as to lost profits claims; that the Court adopt the schedule for disclosures outlined in paragraph 9(b) above, and that the Court set a conference for further discussion of this case.

*/s/ Wilson F. Green*
Attorney for Plaintiffs
Boa Vida Healthcare, LLC
and Boa Vida Hospital of
Aberdeen MS, LLC d/b/a
Monroe Regional Hospital

**OF COUNSEL:**
Wilson F. Green
P.O. Box 2536
Tuscaloosa, Alabama 35403
(205) 722-1018
wgreen@fleenorgreen.com

## CERTIFICATE OF SERVICE

The foregoing is being served on the following by **electronic mail only** through the CM/ECF system:

James F. Henry (jfh@cabaniss.com)
Diane B. Maughan (dbm@cabaniss.com)
Cabaniss Johnston Gardner Dumas & O'Neal, LLP
Renasant Place, Suite 700
Birmingham, AL 35203

                                                                    */s/ Wilson F. Green*
Attorney for Plaintiffs
Boa Vida Healthcare, LLC
And Boa Vida Hospital of
Aberdeen MS, LLC d/b/a
Monroe Regional Hospital